IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JUDICIAL WATCH, a District of )
Columbia corporation, and THE DAILY )
CALLER NEWS FOUNDATION, )
)
      Petitioners-Below, )
      Appellants, )
) C. A. No. N20A-07-001 FWW
      v. )
)
UNIVERSITY OF DELAWARE, )
)
      Respondent-Below, )
      Appellee. )

Submitted: July 31, 2024
Decided: August 5, 2024

*Upon Petitioners' Motion for Relief from Judgment*
**DENIED.**

## MEMORANDUM OPINION

William E. Green, Jr., Esquire, Theodore A. Kittila, Esquire, Michael Bekesha, Esquire, HALLORAN FARKAS + KITTILA, LLP, 5722 Kennett Pike, Wilmington, DE 19807, attorneys for Judicial Watch and The Daily News Foundation, Petitioners-Below, Appellants.

William E. Manning, Esquire, James D. Taylor, Esquire, Marisa R. De Feo, Esquire, Juliana Clifton, Esquire, SAUL EWING LLP, 1201 N. Market Street, Suite 2300, Wilmington, DE 19801, attorneys for University of Delaware, Respondent-Below, Appellee.

**WHARTON, J.**

## I. INTRODUCTION

In 2012, then-Vice President Joseph R. Biden, Jr. donated his Senatorial papers ("Papers") to the University of Delaware (the "University") subject to an agreement that restricted the University's ability to make the Papers available to the public. The Papers are voluminous, consisting of nearly 2,000 boxes and over 400 gigabytes of electronic records. In 2020, Judicial Watch, Inc. ("Judicial Watch") and the Daily Caller News Foundation ("DCNF") (collectively, the "Petitioners" or "Appellants") submitted separate requests to the University under the Delaware Freedom of Information Act ("FOIA")[1] to access the Papers and related records.

In its opening section, FOIA sets out its "Declaration of Policy":

> It is vital in a democratic society that public business be performed in an open and public manner so that our citizens shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy; and further, it is vital that citizens have easy access to public records in order that the society remain free and democratic. Toward these ends, and to further the accountability of government to the citizens of this State, the chapter is adopted, and shall be construed.[2]

But, as the expression goes, the devil is in the details. In FOIA's Declaration of Policy, it appears the devil is in the exemptions. The University is specifically

---

[1] 29 *Del. C.* §§ 10001-10007.
[2] 29 *Del. C.* § 10001.

exempted – "'Public body,' 'public record,' and 'meeting' shall not include the activities of the University of Delaware and Delaware State University.'"[3] There are three exceptions to that exemption. One is that the Board of Trustees of the University is a "public body," another that meetings of the full Board of Trustees are public "meetings," and the third that "documents relating to the expenditure of public funds" are "public records."[4] Exercising its exemption, the University denied both FOIA requests.

Litigation in this Court and the Delaware Supreme Court has clarified and narrowed the Court's present focus. First, the Supreme Court explained, "documents relating to the expenditure of public funds" are documents that "give an account of the University's expenditure of public funds" as opposed to documents that were created using public funds.[5] Second, in order for the University to sustain its denial of a FOIA request, it must provide the requestor with "[a] description of the search and the outcome of the search must be reflected through statements made under oath, such as statements in an affidavit, in order for the public body to satisfy its burden."[6] Ultimately, this Court and the Supreme Court were satisfied that the University had met its burden in denying the Appellant's requests.[7]

---

[3] 29 *Del. C*. 10002(i)
[4] *Id.*
[5] *Judicial Watch, Inc. v University of Delaware,* 267 A.3d 996, 1005 (Del. 2021)
[6] *Id.* at 1012-13.
[7] *Judicial Watch, Inc. v. University of Delaware,* 2022 WL 10788530 at *3 (Del.

The case was closed, and so matters stood until Special Counsel Robert K. Hur ("Hur"), who was appointed to investigate the handling of classified materials by now-President Biden during his years as Senator and Vice-President, issued his report (the "Hur Report"). The Hur Report disclosed that two of President Biden's longtime former Senate staffers were paid by the University to conduct a pre-donation review of the Senate Papers and recommend to him which papers to donate.[8] In the Appellants' view, this disclosure contradicts the sworn affidavit upon which this Court relied in denying them relief, requiring this Court to vacate its prior judgment and/or to reopen the record to allow them to take additional discovery to vet the University's earlier representations.[9]

The Court is unpersuaded for three reasons, discussed more fully in this Memorandum Opinion. First, the Court is not persuaded that the revelation in the Hur Report contradicts the broad representations by the University that formed the basis of the Court's earlier decision. Second, and more importantly, as counsel for the Appellants acknowledged at oral argument, the only question opening the judgment would resolve is whether any records exist relating to the expenditure of State funds in connection with the University's payment to the former Biden staffers.

---

Super. Ct. Oct. 19, 2022) (*aff'd Judicial Watch, Inc. v. University of Delaware,* 2023 WL 4377918 (Del. Jul. 6, 2023).

[8] Appellants' Mot for Relief, at 2, D.I. 42.

[9] *Id.* at 6.

On July 18, 2024, the University submitted an affidavit from its FOIA Coordinator, Tara Mazer, reporting that, after an inquiry, the payments to the former Biden staffers were not made with State funds. The only outstanding question has been answered. Finally, at argument, counsel for the University stated that the University would answer specific FOIA requests asking the University to produce any documents related to the expenditure of State funds in connection with the payments to the former Biden staffers. To the extent Appellants are dissatisfied with the University's most recent response, it should take counsel up on his offer.

## II.    FACTS AND PROCEDURAL HISTORY

This case traces its origin to June 6, 2012, when then-Vice President Joseph R. Biden, Jr. donated the Papers to the University's Library.[10] The Papers consisted of more than 1,850 boxes of archival records and 415 gigabytes of electronic records from President Biden's 36-year career in the United States Senate.[11] They were acquired by the University pursuant to a gift agreement that allows the University to make the Papers publicly available after they have been properly processed and archived.[12]

On April 30, 2020, Judicial Watch, a nonprofit organization that regularly requests government records under federal and state "freedom of information"

---

[10] *Judicial Watch,* 276 A.3d at 999.
[11] *Id.*
[12] *Id.*

5

acts, submitted a request under 29 *Del. C.* 10003 (the "Judicial Watch Request") to the University, seeking "all records and communications from the University about the proposed release of the Papers, as well as any communications between the University and either President Biden or anyone acting on his behalf."[13] On April 30, 2020, DCNF, a nonprofit media organization, also submitted a much broader FOIA request to the University (the "DCNF Request"). The DCNF Request, demanded not only "communications between the University and President Biden and his staff, but also visitor logs from the department where the Papers are housed, the Papers themselves, and the Agreement under which the Papers were donated to the University."[14]

On May 20, 2020, the University, through its FOIA Coordinator, Associate Vice President, and Deputy General Counsel, Jennifer Becnel-Guzzo ("Becnel-Guzzo"), denied both requests.[15] The University reasoned that, since only University records that relate to the expenditure of public funds are considered "public records" subject to disclosure under § 10002(i), and since no public funds had been spent in relation to the Papers, they were not subject to disclosure under FOIA.[16]

---

[13] *Id.* at 1000.
[14] *Id.*
[15] *Id.* at 1001.
[16] *Id.*

On May 26, 2020, Judicial Watch petitioned the Delaware Attorney General's Office ("AGO"), claiming that the University's denial of its request violated FOIA because the University expended public funds on the Papers by storing them in the University's library and paying library staff and because the University failed to adequately search for the requested records.[17] On May 28, 2020, DCNF likewise petitioned the AGO to review the University's denial of its request for a potential FOIA violation.[18] On June 25, 2020, and July 1, 2020, the AGO issued opinions concluding that the University had not violated FOIA.[19]

On July 2, 2020, the Appellants filed a joint notice of appeal in the Superior Court.[20] The Appellants argued that in accepting the University's uncorroborated representations regarding the content of the requested records, the AGO improperly shifted the burden of proof to the Appellants, erroneously concluded that the Papers were not subject to FOIA, and incorrectly concluded that the University conducted adequate searches to discover whether any records were responsive to their requests.

This Court affirmed the AGO's decisions.[21] It held, among other things, that the phrase "relating to the expenditure of public funds" meant "those [documents]

---

[17] *Id.*
[18] *Id.*
[19] *Id.* at 1001-02.
[20] D.I. 1.
[21] *Judicial Watch v. Delaware Dept. of Justice,* 2021 WL 22550 (Del. Super. Ct. Jan., 2021).

7

that discuss or show how the University itself spends public funds."[22]  Because the Papers were not likely to discuss how the University spends public funds, this Court held that they are not "public records" and thus not subject to FOIA.[23]  Turning to the Appellants' argument that uncorroborated statements by the University's Deputy General Counsel regarding the use of public funds to support the Papers are insufficient to meet the University's burden of proof under Section 10005(c), this Court noted that FOIA only requires the University to provide its reasons for denying a request - not supporting proof.[24]  It further noted that because all Delaware lawyers are bound by a duty of candor, the representations by the University's counsel should be given proper weight and held that the University satisfied its burden of proof required by FOIA.[25]

On appeal, the Delaware Supreme Court affirmed this Court in part, and reversed it in part.[26]  The Supreme Court affirmed this Court in holding that a document is a "public record" and subject to FOIA when the content of the document itself relates to the expenditure of public funds.[27]  But, the Supreme Court held that FOIA required that the University provide more than this Court required in order to

---

[22] *Id.* at *6.
[23] *Id.* at *4-5.
[24] *Id.*
[25] *Id.*
[26] *Judicial Watch,* 267 A.3d 996.
[27] *Id.* at 1005.

carry its burden of proof. That Court held that, in order to meet its burden of proof, "a public body must state, under oath, the efforts taken to determine whether there are some responsive records and the results of those efforts."[28] It remanded the matter to this Court to determine "whether the University has satisfied its burden of proof based on competent evidence in accordance with this ruling" and granted this Court leave to accept additional evidence or submissions.[29]

On remand, the University filed an Opening Brief,[30] accompanied by an affidavit from Becnel-Guzzo, dated February 3, 2022.[31] Appellants filed an Answering Brief, challenging the sufficiency of the affidavit in several respects.[32] By Memorandum Opinion dated March 7, 2022, this Court found that the generalized statements in the Affidavit did not meet "the burden to create a record from which the Superior Court can determine whether the University performed an adequate search for responsive documents."[33] The Court directed the University to provide more specific information as to who (identified at least by position within the University) supplied the information that: (1) no State funds were spent by the University; (2) no salaries of any University personnel involved in the custody and

---

[28] *Id.* at 1012.
[29] *Id.*
[30] Appellee's Op. Br., D.I. 26.
[31] Becnel-Guzzo Aff., D.I. 25.
[32] Appellee's Ans. Br., D.I. 27.
[33] *Judicial Watch v. University of Delaware,* 2022 WL 2037923 at *3 (Del. Super. Ct. Jun. 7, 2022).

curation of the papers were paid with State funds; (3) no State funds were spent on the University's email system for communications between University personnel and Biden representatives; (4) when such inquiries were made; and (5) what, if any, documents (other than the gift agreement) were reviewed.[34]  Respondents were granted leave to submit additional information, under oath, within 45 days of the date of the Memorandum Opinion.[35]

The University filed a Supplemental Affidavit of Becnel-Guzzo, dated July 22, 2022.[36]  The Supplemental Affidavit stated, in pertinent part, that she has responded to numerous FOIA requests having to do with the University's relationship to President Biden, including earlier FOIA requests regarding the Papers.[37]  On several occasions she inquired of University personnel, including the University's Budget Director, Lionel Gilibert ("Gilibert"), and the University's Vice Provost of Libraries and Museums, Trevor Dawes ("Dawes"), whether State funds had been spent on a variety of matters related to President Biden, including the Papers.[38]  The particular communications on which she relied in responding to Petitioners' FOIA requests occurred in January 2020.[39]  In no case did she find that

---

[34] *Id.*
[35] *Id.*
[36] Becnel-Guzzo Supp. Aff., D.I. 30.
[37] *Id.* at ¶ 5.
[38] *Id.*
[39] *Id.*

State funds were spent by the University on any such matter.[40] In May 2019, after receiving a request for documents related to any payments that might have been made to President Biden, she confirmed with Gilibert that the University had not made any payments with State funds to President Biden.[41] Also in May 2019, shortly after receiving earlier inquiries for access to the Papers, she inquired of Gilibert and Dawes whether the University paid any consideration, State funded or otherwise, to President Biden and confirmed it did not.[42] Finally, she added that, although she did not review specific documents, the University's auditors annually produce, and make available to the public, a Statement of State of Delaware Funds Received and Expended, which she frequently reviews in considering FOIA requests.[43] She stated that her representations in her Supplemental Affidavit were consistent with that annual report on the University's receipt and expenditure of State funds.[44]

On July 27, 2022, Appellants filed their Objection to the University's Supplemental Affidavit.[45] The University filed its Response to Appellants' Objection on September 22, 2022.[46] On October 19, 2022, this Court issued its decision finding that Becnel-Guzzo's Supplemental Affidavit demonstrated that the

---

[40] *Id.*
[41] *Id.* at ¶ 7.
[42] *Id.* at ¶ 8.
[43] *Id.* at ¶ 12.
[44] *Id.*
[45] Appellants' Objections, D.I. 31.
[46] Appellee's Resp. D.I. 35.

11

University had met its burden of creating a sufficient record for the Court to confirm its prior ruling that the requested information was not subject to FOIA.[47] The Supreme Court affirmed that decision on July 6, 2023.[48]

Now before the Court is Appellants' Motion for Relief From Judgment, filed on March 21, 2024.[49] It contends that the revelation that the University paid former Biden Staffers to review the Papers calls into question the representations in Becnel-Guzzo's Supplemental Affidavit upon which the Court relied in its October 19, 2022 decision.[50] They ask the Court to vacate that judgment and order the University to produce all documents in the relevant chapter of the Hur Report, and/or reopen the record and permit them to take discovery to vet the University's representations in the Supplemental Affidavit.[51] The University responded in opposition on April 25, 2024,[52] and the Appellants replied on May 9, 2024.[53] The Court held oral argument on June 13, 2024.[54]

On July 18th, the University reported that it had investigated whether the payments to the former Biden staffers were made with State funds and determined

---

[47] *Judicial Watch v. University of Delaware,* 2022 WL 10788530 at *3 (Del. Super. Ct. Oct. 19, 2022).
[48] *Judicial Watch v. University of Delaware,* 2023 WL 4377918 (Del. Jul. 6, 2023).
[49] Appellants' Mot. for Relief, D.I. 42.
[50] *Id.*
[51] *Id.*
[52] Appellee's Resp., D.I. 43.
[53] Appellants' Reply, D.I. 48.
[54] *See,* Tr. Hr'g. June 13, 2024, D.I. 53.

that no State funds were expended.[55]  It supported that representation with the affidavit of its FOIA Coordinator, Tara Mazur.[56]  The Court provided the Appellants with an opportunity to respond, and, on July 31st, they did.[57]  In their view, the Mazur affidavit fails to resolve the matter.[58]

### III.    THE PARTIES' CONTENTIONS

The impetus for the Appellants' motion is the Hur Report, more properly referred to as the Report of the Special Counsel on the Investigation Into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr., released  by the United States Department of Justice in February 2024.[59]  Of significance to the Appellants is the Report's disclosure that the University paid two former longtime Biden staffers who had been asked by President Biden to conduct a pre-gift review and recommend to him which papers to donate.[60]  They view this disclosure as contradicting a statement in Becnel-Guzzo's Supplemental Affidavit that no consideration was paid to President Biden, "State funded or otherwise."[61]  They allege that President Biden

---

[55] Letter from William E. Manning, Esquire, D.I. 55.
[56] Mazur Aff., D.I. 56.
[57] Letter from William E. Green, Jr., D.I. 58.
[58] *Id.*
[59] Appellants' Mot. for Relief, at 1, D.I. 42.
[60] *Id.* at 2.
[61] *Id.* at 3.

13

"directed his former staffers' work in reviewing and cataloguing the Senate Papers – and the University paid for it."[62] They contend that those payments "constitute consideration paid on President Biden's behalf in connection with the donation of Senatorial Papers to the University – contrary to the representations in the Supplemental Affidavit."[63] In other words, President Biden benefitted because he solicited and directed the former staffers' work on his behalf, but he did not pay them, the University did.[64]

The Appellants seek relief under Superior Court Civil Rules 60(b)(2) and (6).[65] Under Rule 60(b)(2), the disclosures in the Hur Report are "newly discovered evidence" that are material, relevant and may change the outcome of the Court's October 19, 2022 decision because they directly contradict representations in the Supplemental Affidavit.[66] Additionally, in light of the University's obfuscation regarding its use of funds to acquire the Papers, the Court should take into account equitable principles and exercise is discretion under Rule 60(b)(6) to vacate the judgment and/or open the record to allow the Appellants to take discovery.[67]

---

[62] *Id.*
[63] *Id.*
[64] *Id.* at 3-4.
[65] *Id.* at 4-6.
[66] *Id. at* 4-5.
[67] *Id.* at 6.

The University opposes the motion.[68]  It finds nothing in the Hur Report that is at odds with the Supplemental Affidavit.[69]  Nor is there anything in the Hur Report to suggest that the former Biden staffers were paid with State funds.[70]  Further, the University distinguishes payments to third parties, even former Biden staffers, from payments to President Biden himself.[71]  For those reasons, the University contends, there is no "'newly discovered evidence'" that is "'so material and relevant that it will probably change the result outcome'" without being "'merely cumulative or impeaching in character'" to warrant the "'extraordinary circumstances'" required for relief under Rule 60(b).[72]

In reply, the Appellants argue that the key language of the Supplemental Affidavit that the Hur Report calls into question is the statement that the University paid no consideration, "State funded or otherwise, to Mr. Biden for the Senate Papers."[73]  In their view, the University's "indirect payment to President Biden via payment to his former staffers" renders that statement "plainly unreasonable."[74]  In light of that misleading statement, the "newly discovered evidence" of the Hur

---

[68] Appellee's Resp., D.I. 43.
[69] *Id.* at 1.
[70] *Id.* at 5.
[71] *Id.*
[72] *Id.* at 5-6.
[73] Appellant's Reply, at 4, D.I. 48.
[74] *Id.*

Report, and the extraordinary circumstances present here, relief is appropriate under Rules 60(b)(2) and (6).[75]

Subsequent to oral argument the University wrote to the Court. It advised the Court that, in an effort to resolve what it believed to be the only remaining arguably unresolved issue, its FOIA Coordinator, Tara Mazur, investigated whether any documents related to the expenditure of State funds existed in connection to the payment to the former Biden staffers.[76] She submitted an affidavit in which she stated that she, "inquired of the University's Budget Director, Lionel Gilibert as well as Aimee Turner, Vice President, Finance & Treasurer. They or their teams identified electronically stored payments and found no evidence that the Payments had been made with State funds."[77]

The Appellants responded on July 31, 2024.[78] They dispute that the inquiry undertaken by Mazur is the appropriate inquiry.[79] They contend that the matter turns on whether the findings of the Hur Report undermine the credibility of the University's representations upon which the Court previously relied and whether the University met its burden of proof in denying their FOIA requests.[80] They further

---

[75] *Id.* at 4-5.
[76] Letter from William E. Manning, Esquire, D.I. 55.
[77] Mazur Aff., at ₱ 3, D.I. 56.
[78] Letter from William E. Green, Esquire, D. I. 58.
[79] *Id.*
[80] *Id.*

contend that if the Mazur affidavit is treated as a FOIA response, it does not satisfy the University's burden because it does not identify specifically what the "electronically stored records of the Payment" that were reviewed were.[81]  In short, the affidavit contains an insufficient description of the reviewed records to pass muster.[82]

## IV.    STANDARD OF REVIEW

Superior Court Civil Rule 60(b) states in pertinent part:

> (b) Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the Court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment . . ."

## A.    Rule 60(b)(2) Standard.

The Court may grant a petitioner relief from a judgment under Rule 60(b)(2) if it

---

[81] *Id.*

[82] *Id.*

finds that newly discovered evidence – with due diligence – could not have been discovered in time for a new trial to be requested under rule 59(b).[83] Under Rule 60(b)(2), "newly discovered evidence" is defined as evidence that has been in existence and hidden at the time of the judgment.[84]

There are five predicates under Rule 60(b)(2) that must be satisfied before the judgment may be altered, amended, or vacated: (1) newly discovered evidence has come to the proponent's knowledge since the trial; (2) that could not, in the exercise of reasonable diligence, have been discovered for use at trial; (3) that is so material and relevant that it will probably change the result if a new trial is granted; (4) that is not merely cumulative or impeaching in character; and (5) that is reasonably possible will be produced at trial.[85] The party moving for relief from judgment then has the burden of establishing each of the five elements before the court may rule.[86]

## B.    Rule 60(b)(6) Standard.

Delaware long ago adopted an "extraordinary circumstances" standard for motions under Rule 60(b)(6).[87] Relief sought under 60(b)(6) covers "any other

---

[83] *Kaiser-Frazer Corp. v. Eaton,* 101 A.2d 345 (Del. Super. Ct. 1953).
[84] *Bachtle v. Bachtle,* 494 A.2d 1253, 1255 (Del. 1985) (citing *Ryan v. United States Lines Co.,* 303 F.2d 430, 434 (2d Cir., 1962)).
[85] *Albu Trading, Inc. v. Allen Family Foods, Inc.*, 2002 WL 531203 at *3 (Del. Super. Ct. Apr. 4, 2002), *aff'd.* 2002 WL 31681803 (Del. Nov. 2002).
[86] *Id.*
[87] *Jewell v. Division of Social Services*, 401 A.2d 88, 90 Del. 1979).

reason" that justifies relief.[88]  It is an "independent ground for relief, with a different standard to be applied than under [Rule 60(b)'s] other subdivisions."[89] "Extraordinary circumstances" allow courts to relieve a judgment "whenever such action is appropriate to accomplish justice."[90]

## V. DISCUSSION

### A.    Rule 60(b)(2).

The Court first addresses the Appellants' efforts under Rule 60(b)(2).  The Hur Report does not identify precisely when the payments were made.[91]  It does state, however, that the former staffers were asked to begin their review in the spring of 2011, and the University received the Papers between 2011 and 2015.[92]  Thus, the Court finds it reasonable to conclude that the staffers were paid well before this litigation began in 2020.  One of the staffers disclosed the payments by the University in an interview on March 14, 2023.[93]  This date is after this Court entered its judgment in October 2022.  Accordingly, the Court finds that the information regarding the University's payments to the two former Biden staffers amounts to newly discovered evidence that has come to the Appellants' knowledge since the

---

[88] *Id.*
[89] *Id*.
[90] *Id*. (quoting *Klapprott v. United States,* 335 U.S. 601, 615 (1949).
[91] *See,* Appellants' Mot. for Relief, Ex. 1, Her Report, Ch. 15, at n. 1247, D.I. 48.
[92] *Id.* at 313.
[93] *Id.* at n. 1247.

19

Court entered judgment and that the information could not have been discovered for use prior to then. The Court further finds that it is reasonably possible that the Appellants would be able to produce the information at any future trial or hearing.

Of course, the foregoing simply is preamble. The crux of the parties dispute is whether the information is so material and relevant that it would likely change the outcome and is not merely cumulative or impeaching. In order to make this determination, it is helpful to review the affidavit upon which the Court based its earlier decision. The affiant, Becnel-Guzzo, reviewed her experience responding to numerous previous FOIA requests involving the Papers,[94] and her sources of information, including the people to whom she spoke and the documents she reviewed.[95] She concluded that "no State funds were spent by the University in any way that related to Mr. Biden or the Senate Papers."[96] That statement is comprehensive and would seem to include any payments to the former Biden staffers.

The Appellants seize on a statement earlier in the affidavit at Paragraph 8 where Becnel-Guzzo states:

> In May 2019, shortly after receiving earlier inquiries for access to the Biden Senate Papers, I inquired of Mr. Gilibert, the University's Budget Director, and Vice Provost Dawes, whether the University paid any

---

[94] Becnel-Guzzo Supp. Aff. at 3, D.I. 30.
[95] *Id.* at 3-5.
[96] *Id.* at 5.

> consideration, State funded or otherwise, to Mr. Biden for
> the Senate Papers.  I confirmed it did not.[97]

In the Appellants view, the "consideration, State funded or otherwise, to Mr. Biden" language should be interpreted as encompassing the "consideration paid on President Biden's behalf" when the University paid for the review of his Papers conducted by his former staffers.[98]  As a result, the failure of Becnel-Guzzo to address these payments "on behalf of" President Biden  calls into question the credibility of her affidavit.

The Appellants invest the expression "consideration, State funded or otherwise, to Mr. Biden" with more significance than it credibly can sustain.  Their argument assumes that Becnel-Guzzo agreed with them that the payments were made on President Biden's behalf.  There is no reason to believe that Becnel-Guzzo subscribed to that legal conclusion.  In fact, it is controverted by the University. Nor, is there any reason to believe that she intended to conceal the payments, or to hide their source.  Even if documents existed showing that the  University paid President Biden directly with State funds for the pre-donation review, it is not clear that circumstance would require disclosure of the Papers themselves.   The Court perceives no reason for Becnel-Guzzo to mislead in her Supplemental Affidavit.  All of which leads the Court to conclude that the newly discovered evidence is not "so

---

[97] *Id.* at 4.

[98] Appellants' Mot. for Relief, at 3, D.I. 42.

material and relevant that it would probably change the result." At best, it is only merely arguably impeaching.

## B.     Rule 60(b)(6).

In order to warrant relief under Rule 60(b)(6), extraordinary circumstances must exist such that granting relief will be in the interests of justice. Some perspective is in order.

The Judicial Watch Request asked, in short, for "all records and communications from the University about the proposed release of the Papers, as well as any communications between the University and either President Biden or anyone acting on his behalf."[99]   The broader DCNF Request sought "not only communications between the University and President Biden and his staff, but also visitor logs from the department where the Papers are housed, the Papers themselves, and the Agreement under which the Papers were donated to the University."[100] Were the University fully subject to FOIA, honoring these requests would be consistent with FOIA's Declaration of Policy.  But, the University is substantially exempt. Years of clarifying litigation have brought the Appellants to the point where they acknowledge that all they are entitled to under FOIA are documents related to the expenditure of State funds in connection with the payments to former Biden staffers

_____

[99] *Id.* at 1000.
[100] *Id.*

for their pre-donation document review.[101]

The University's willingness to respond to FOIA requests directed specifically at the payments to the staffers provides the Appellants with a wholly adequate alternative remedy apart from the extraordinary relief of vacating a settled judgment. There simply is no case to be made now that extraordinary circumstances exist to require vacating the judgment in order to vindicate the interests of justice. As set out below, this conclusion is reinforced by the results of the University's additional investigation into the sources of funds paid to the former Biden staffers.

## C.    The Mazur Affidavit.

At argument, the Court sought to clarify with Appellants' counsel where reopening the judgment and/or permitting limited discovery might lead.

> THE COURT:  Well, let me see if I can't drill down on what you think the essential question here is.  So we're talking now, after the case has been up and down to the Supreme Court and whatnot, aren't we about the narrow question of whether there are documents which relate to the expenditure of state funds?
>
> MR. GREEN: Well, realistically, Your Honor, here, we're here today on the question of whether the supplemental affidavit actually satisfies the University's burden of proof.

---

[101] Given their requests, even if there were such documents that revealed that the former staffers were paid with State funds and even if those payments were intended to benefit President Biden, the Court suspects the Appellants would view their original goals as unfulfilled.

THE COURT:  Right, right, but on that issue?

MR, GREEN:  Oh, certainly, certainly.  Well, on that issue - -

THE COURT:  And then - - and then, I guess the question is - - or you tell me whether you think the question is whether these arrangements, whatever they were or documents that reflect the arrangements with the former staffers who curated the documents and were paid by the University, whether documents about those arrangements relate to the expenditure of State funds.

MR. GREEN:  Well, the discrete answer to the question of whether documents related to the expenditure of State funds, that's unclear because we don't have those records.

THE COURT:  Right, but isn't that the question, ultimately?  That if they do not relate to the payment of State funds. However we learn about that, you know, does that end the question?

MR. GREEN:  Well, if we are jumping forward to the ultimate relief sought in the FOIA, then the answer would be yes.

THE COURT:  Yes. But you are asking for a way to find that out.

MR. GREEN:  Yes.  No, that's precisely correct.[102]

Later, the Court returned to the subject in the context of what type of response from the University might satisfy the Appellants.

THE COURT:  Well, the statement is, obviously, an under-oath statement to the effect that we have looked at

---

[102] Tr. Hr'g., June 13, 2024, at 4:8-6:1, D.I. 53.

24

the payment to the former Biden staffers and searched for any documents pertaining to that payment, and to the extent we found any documents, none of them involved or related to the expenditure of State funds.

MR. GREEN: Well, that would bring this case a lot further than it is, Your Honor. That's not something the University has ever agreed to do.

THE COURT: Well, I understand that, but if you were confronted with that, where would you be?

MR. GREEN: Well, if we had been confronted with that - -

THE COURT: In other words, if the University had responded and came back with that, where would that leave you?

MR. GREEN: I think that may have settled the issue, Your Honor, depending on the context of the statement.[103]

If they were permitted to take discovery, counsel for the Appellants acknowledged that discovery, whether it be depositions or interrogatories, would be limited to documents related to the expenditure of State funds for the former staffers.

THE COURT: Because then I find out, let's say - - you know, that could lead to a dead end for you, you know, or it could lead to something. And, at this point, if we're kind of narrowly circumscribed to those payments to the former staffers of - - that's about what you would get if you were successful, isn't it? Any documents that related to the expenditure of State funds in connection with those payments?

Mr. Green: Yes. Under the statute, that's what we'd be

[103] *Id.* at 12:5-13:2.

entitled to.[104]

In his July 31st letter to the Court, counsel for the Appellants argues that the real question for the Court is whether confidence in the Becnel-Guzzo Supplemental Affidavit, upon which the Court relied, has been sufficiently undermined by the Hur Report's findings that the Court can no longer be confident that the University met its burned in justifying its denial of the Appellants' FOIA requests.[105] But, the Court's colloquy with counsel was intended to go beyond that question. The Court was interested in understanding where granting the motion would lead. Appellants' counsel acknowledged that, if the Court reopened the judgment and/or allowed the Appellants to conduct limited discovery, all the Appellants would be entitled to under the statute were any documents relating to the expenditure of state funds in connection with the payments.

The Court was exploring whether the matter could be put to an end if granting the motion led only to a point where the University responded that no State funds were expended after a specific investigation of the sourcing of the payments to the former Biden staffers. In other words, would such a response mean that information from the Hur Report would have been insufficiently relevant and material to change the probable result under Rule 60(b)(2)? And, would such a response demonstrate

---

[104] *Id.* at 17:19-18:6.
[105] Letter from William E. Green, Esquire, D.I. 58.

that no extraordinary circumstances exist requiring the Court to vacate the judgment in order to vindicate the interests of justice under Rule 60(b)(6)?  The Mazur affidavit, whether it is sufficient as a stand-alone FOIA response, is certainly additional evidence that supports the Court's conclusion that the answer to each of those questions is "yes."

It is unsurprising that no documents exist related to the expenditure of State funds in connection with the payments.  In fact, it is to be expected given the Supreme Court's determination that the contents of the documents that the Appellants seek must themselves relate to the expenditure of public funds.[106]  There is scant reason to expect that invoices for services rendered or checks paying those invoice would discuss the source of the funds used to make those payments.[107] Similarly, any other documents related to paying for the pre-donation review are unlikely to make distinctions between State funds and University funds.  The Court perceives no reason for making that distinction.  Certainly, the Appellants have offered no convincing reason for the parties to have done so.

The Court is mindful that the Appellants bear no burden with respect to their original FOIA request.  Nonetheless, in connection with their challenge to the

---

[106] *Judicial Watch,* 267 A.3d at 1005-06.
[107] There is no reason to believe that the Papers themselves, coming from President Biden's time in the Senate, would contain any discussion of the expenditure of State of Delaware funds.

credibility of the Becnel-Guzzo Supplemental Affidavit in this motion, the Court is confident that the Appellants would have brought to the Court's attention any information in their possession suggestion the expenditure of State funds was address in the documents related to the payments. No such information has been forthcoming.

## VI. CONCLUSION

As explained above, the Court finds that the newly discovered evidence that former Biden staffers were paid by the University to conduct pre-donation reviews is not so material and relevant that it would probably change the result of the Court's October 19, 2022 decision that the University had met its burden of justifying its denial of the Appellants' FOIA requests. The Court further finds that the newly discovered evidence does not establish such extraordinary circumstances so as to require relieving the Appellants of the Court's October 19, 2022 judgment in the interest of justice. Accordingly, the Petitioners' Motion for Relief from Judgment is **DENIED**.

**IT IS SO ORDERED.**

**/s/ Ferris W. Wharton**
Ferris W. Wharton, J.
